In the Matter of M. LAVINIA YATES, Petitioner *v.* JOHN J. FAGAN, as Acting Collector of Taxes of the City of New York, Respondent.

Supreme Court, Special Term, Queens County, December 23, 1946.

*Haughwout & Guthrie* for petitioner.

*John J. Bennett, Corporation Counsel (Joseph J. Dunn* of counsel), for respondent.

FROESSEL, J. Petitioner applies, by petition and notice of motion to the City of New York only, for an order canceling and discharging of record in the Tax Office of the County of Queens, certain tax certificates and tax leases.

The petitioner alleges, among other things, that she held by assignment a certain mortgage covering four adjoining parcels of property in Queens County, known as lots Nos. 178–181 on " Map of 400 Lots part of Laurel Hill " filed August 6, 1853, which mortgage was dated July 20, 1899; that upon the foreclosure of said mortgage she acquired title to said real property by a referee's deed dated August 28, 1933. The petitioner further alleges that the County Treasurer of Queens County, pursuant to chapter 385 of the Laws of 1871, issued the following tax certificates and leases: Tax certificate No. 1367 dated September 7, 1874, issued to one Michael J. Hyne on the sale of lot No. 178 for $8.04 for 1,000 years and upon which a tax lease is noted as having been issued in December, 1875; tax certificate No. 1368 dated September 7, 1874, issued to one Michael J. Hyne on the sale of lot No. 179 for $8.04 for 1,000 years and upon which a tax lease is noted as having been issued in December, 1875; tax certificate No. 1369 dated September 7, 1874, issued to one Michael J. Hyne upon the sale of lot No. 180 for $8.04 for 1,000 years upon which a tax lease is noted as having been issued in December, 1875; tax certificate No. 675 dated August 22, 1877, issued to one P. J. Marsh on the sale of lot No. 181 for $4.84 for 10,000 years for which no tax lease was

ever issued; tax certificate No. 927 dated August 2, 1875, issued to one P. J. Marsh on the sale of lot No. 181 for $8.33 for 10,000 years, for which no tax lease was ever issued, and that the three tax leases affecting lots Nos. 178, 179 and 180 were recorded on January 6, 1876.

On this application petitioner seeks the cancellation of the " record of said tax certificates and tax leases " *in the tax office*. This record is an account of what transpired in connection with the sales in question, and I know of no authority warranting this court to cancel such record made pursuant to law.

(1) As to the sales resulting in the tax leases, which were recorded, the record of such sales is the basis for whatever rights the tax lessee may have. Such rights may be of substantial value; indeed even more so than the value of the fee itself. In *Matter of Zipkin (Hamilton Place)* (242 App. Div. 772, motion for leave to appeal to Court of Appeals denied 242 App. Div. 837, and 266 N. Y. lviii) our Appellate Division affirmed the granting of an award, made to an " unknown owner " in a condemnation proceeding, to the assignee of a 10,000-year lease issued by the County Treasurer of Queens County, notwithstanding the fact that notice of the application had not been given to the fee owner. Certainly such record may not be cancelled on a mere notice of motion to the City. The tax lessee is entitled to due notice in an appropriate action.

(2) Nor is there any authority in this court, upon an application of this character, to cancel the record of tax sales with respect to lot No. 181, in which cases no leases were issued. Here again the record is a correct account of what transpired in connection with these sales, and there is neither reason nor necessity for their cancellation. Under section 17 of chapter 385 of the Laws of 1871, under which the sales in question were made, the owner had the right to redeem within fifteen months from the date of sale, after which the purchaser was entitled to a lease, which, in these cases, he did not procure. Section 131 of the Tax Law, as amended by chapter 344 of the Laws of 1902, provided in part as follows: " The owner of any certificate of sale of land sold by the comptroller for taxes prior to January first, nineteen hundred and two, (except the state, and the purchaser at the tax sale who is the owner with a duly recorded title of the land sold,) must make application in writing to the comptroller for a conveyance of such land within one year after May first, nineteen hundred and two, provided the purchaser at the tax

sale, his heirs, devisees, executors or testamentary trustees have not conveyed the land therein described and such conveyance been duly recorded, or mortgaged the same and the mortgage has been foreclosed and the land sold and conveyed thereunder or said land has not been redeemed from the tax sale. If application for a conveyance is not made as herein provided the certificate shall become void, and no claim can be maintained under the purchase.''

This provision remained in effect until 1928 when it was omitted in the revision of the Tax Law, apparently because it was no longer necessary (L. 1928, ch. 845). However, the failure to continue this provision did not affect or impair any rights accrued or any forfeiture incurred. (General Construction Law, § 93.) By section 158 of article 7 of the Tax Law, article 6 embracing section 131 is made applicable to County Treasurers' sales.

In *Peterson* v. *Martino* (210 N. Y. 412) it was held that the General Tax Law overrides the earlier statutes relating to taxation. In *Halleran* v. *Manzione* (166 Misc. 679) it was expressly held that the Queens County Tax Law was repealed by implication by the General Tax Law; whether the instrument was a tax deed or tax lease made no difference. This determination, after review by our Appellate Division (257 App. Div. 852) was expressly upheld by the Court of Appeals (281 N. Y. 845, 849). See, also, 1945 Report of the Attorney General, page 283, in which he expressly holds that the time limitation contained in section 131 of the Tax Law applies to County Treasurers' sales even when the county is the holder of the tax sale certificate.

·It follows, therefore, that if the holder of either of the certificates of sale affecting lot No. 181 failed to apply before May 1, 1903, for the 10,000-year lease, which is equivalent to a conveyance (*Halleran* v. *Manzione, supra;* Real Property Law, § 290, subd. 3), to which he was entitled under each certificate, '' the certificate shall become void, and no claim can be maintained under the purchase.''

Under the appropriate state of facts, therefore, and in the light of the law, the record of the issuance of the tax sale certificates would not affect the title and may be disregarded. The existing record will indicate the right or absence of right possessed by the holder of a certificate of sale, and there is no warrant in law for the cancellation of such record. The situation is no different from a mechanic's lien, a judgment or other lien of record which expires under the law after a given time; in practice, they are simply disregarded.

.Accordingly, the motion is denied as to tax sale certificates Nos. 1367, 1368 and 1369, upon which tax leases were issued in December, 1875, with respect to Lots Nos. 178, 179 and 180, without prejudice to petitioner's right to institute a plenary action with respect thereto. The motion is denied in all respects as to tax sale certficates Nos. 675 and 927 issued with respect to Lot No. 181.

Settle order on notice.